811 A.2d 994

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Aaron JONES, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 30, 1999.

Decided Dec. 3, 2002.

118

Daniel Silverman, Philadelphia, for Aaron Jones, appellant.

Catherine Marshall, Philadelphia, for the Com.

Robert A. Graci, Harrisburg, for Office of Atty. Gen., appellee.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

Justice CASTILLE.

This is an appeal from the denial of appellant's petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.* Appellant alleges various claims of trial court error, prosecutorial misconduct, and ineffective assistance of counsel. For the reasons set forth herein, we find that appellant is not entitled to relief and, accordingly, we affirm the order of the PCRA court.

On January 19, 1993, appellant was convicted of first degree murder and criminal conspiracy to commit murder in connection with the August 18, 1990, shooting death of Brian Kennedy. Following a penalty hearing, the jury determined that the one aggravating circumstance it unanimously found outweighed the one mitigating circumstance it found and returned a verdict of death on the murder charge.[1]

The facts underlying appellant's conviction were set forth at length in this Court's opinion on direct appeal. *See Commonwealth v. Jones*, 542 Pa. 464, 668 A.2d 491 (1995). In brief, the trial evidence showed that appellant was the leader of the "Junior Black Mafia" (JBM), an organization which distributed drugs within Philadelphia. Appellant orchestrated the murder of Brian Kennedy in order to avenge the death of Leroy Davis, another high-ranking member of the JBM, who was believed by the organization to have been murdered by Brian Thornton. However, Thornton was incarcerated when appellant planned his revenge. Thus, appellant and his co-defendants decided to "hit" Thornton's cousin, Kennedy, in order to

---

1. The aggravating circumstance found unanimously by the jury was that appellant had been convicted of another federal or state offense for which a sentence of life imprisonment was imposable. 42 Pa.C.S. § 9711(d)(10). Specifically, appellant had been sentenced to a mandatory term of life imprisonment in the U.S. District Court for the Eastern District of Pennsylvania, following his jury conviction for engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848. The federal conviction arose from appellant's leadership position in the "Junior Black Mafia" (JBM). The mitigating circumstance found by the jury was any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense. 42 Pa.C.S. § 9711(e)(8).

avenge Davis' death and to send a message to Thornton that killing a fellow JBM member would not go unpunished. Appellant facilitated Kennedy's murder by *inter alia:* instructing his co-defendants on where and how to murder Kennedy, arranging for the car that was used in the murder, and supplying funds to help his co-defendants abscond after the murder.

Appellant was represented by Gerald Stein, Esquire, both at trial and on direct appeal. On November 25, 1995, this Court affirmed appellant's convictions and sentence of death. *Id.* On January 16, 1996, reargument was denied. The United States Supreme Court denied certiorari on October 7, 1996. *Jones v. Pennsylvania,* 519 U.S. 826, 117 S.Ct. 89, 136 L.Ed.2d 45 (1996).

On October 18, 1996, appellant filed a PCRA petition *pro se.* Presently retained counsel entered his appearance and, on September 22, 1997, counsel filed an amended PCRA petition. A supplemental petition was filed on October 23, 1997. On January 12, 1998, the PCRA court, per the Honorable John J. Poserina, Jr., dismissed the petition without a hearing. This appeal followed.

After filing the notice of appeal, appellant filed a series of substantive motions in this Court, including: (1) a Motion for Remand to the PCRA Court on the Basis of Newly Discovered Evidence—specifically, a superficial review of the Philadelphia criminal justice system by professors David Baldus and George Woodworth (the "Baldus Woodworth study"), and a 1987 videotape made by an assistant district attorney (the "McMahon tape"); (2) a Motion to Supplement the Record with Evidence Obtained after the Lower Court Record Closed-specifically, alleged after-discovered evidence that one of the trial jurors knew appellant and his family, was aware of his involvement in the JBM, and had had a dispute with appellant's nephew; and (3) a Motion for Remand for Meaningful Judicial Review and Disqualification of PCRA Judge or, in the alternative, for an Order that Lower Court Draft an Opinion. On December 23, 1999, this Court issued *per curiam* orders denying the first two motions, and granting the third

motion in part, as we directed the PCRA judge to produce an opinion addressing the issues raised in appellant's appellate brief.[2] The trial court has since complied with our directive.

■ Since the PCRA petition in this case was filed after January 17, 1996, it is governed by the current, amended version of the PCRA. To be eligible for relief under the PCRA, an appellant must prove by a preponderance of the evidence that the conviction or sentence he is collaterally attacking resulted from one of seven specifically enumerated circumstances. 42 Pa.C.S. § 9543(a)(2) (as amended effective January 17, 1996).[3] In addition, an appellant must prove that the issues he raises have not been previously litigated or have not been waived. *Id.* § 9543(a)(3).

Appellant raises nineteen claims for review. The majority of these claims are procedurally barred, *i.e.,* they are previously litigated, they are waived under the PCRA, or they are waived for failure to raise them in the PCRA court below. For purposes of clarity, this Court will not address appellant's

2. We note that appellant had not filed a Statement of Matters Complained of on Appeal due to the then-uncertain status of his representation. Counsel later was permitted to withdraw from the appeal because he had not been retained for that purpose, but reentered his appearance when appellant retained him for appeal.

3. Those circumstances are as follows:
(i) A violation of the Constitution of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.
(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.
(v) Deleted.
(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.
(vii) The imposition of a sentence greater than the lawful maximum.
(viii) A proceeding in a tribunal without jurisdiction.
42 Pa.C.S. § 9543(a)(i)–(viii).

claims *seriatim,* but instead will address those claims that are procedurally barred under Pennsylvania law first.

Appellant raises a number of claims, the underlying substances of which were addressed by this Court on direct appeal. A claim is previously litigated under the terms of the PCRA if, *inter alia,* the highest appellate court in which the petitioner could have had review of the claim as a matter of right has ruled on the merits of the issue. 42 Pa.C.S. § 9544(a)(2). As a result of the PCRA's previous litigation bar, this Court will not address the following five claims:

(1) whether trial counsel was ineffective at the penalty phase for failing to object to the testimony of a Commonwealth witness, State Police Officer Ansel, regarding other homicides, which was both irrelevant and hearsay (Argument III);

(2) whether trial counsel was ineffective at the guilt phase for failing to object to the trial court's allegedly inadequate curative instruction regarding Christopher Anderson's testimony, which was issued in response to a defense objection (Argument XIV);

(3) whether trial counsel was ineffective at the guilt phase for failing to object to the trial court's allegedly inadequate curative instruction regarding the trial prosecutor's closing argument, which was issued in response to a defense objection (Argument XV);

(4) whether the trial court erred in advising trial counsel before closing arguments in the guilt phase that it would issue an instruction describing a Commonwealth witness as an admitted accomplice/polluted source, thereby causing counsel to rely on that instruction, and then refusing to give that instruction (Argument XVI); and

(5) whether direct appeal counsel was ineffective for failing to properly argue on appeal his claim that the trial court erred in denying severance (Argument XVIII).

Appellant attempts to avoid the PCRA's previous litigation bar by couching these claims in terms of ineffective assistance of counsel or by slightly altering the focus or

contours of the claims. It is well-settled, however, that a PCRA petitioner cannot obtain review of claims that were previously litigated by presenting new theories of relief, including allegations of ineffectiveness. *See, e.g., Commonwealth v. Bond*, —— Pa. ——, —— A.2d ——, ——, 2002 WL 1958492, at * 3–4 (Pa. Aug.23, 2002); *Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 939 n. 2 (2001); *Commonwealth v. McCall*, 567 Pa. 165, 786 A.2d 191, 196 (2001); *Commonwealth v. Michael*, 562 Pa. 356, 755 A.2d 1274, 1277 (2000); *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1183 (1999). Accordingly, these five claims are procedurally barred from review.

■ In Argument VIII, appellant claims that his sentence of death was disproportionate to the penalty imposed in similar cases, in violation of § 9711(h)(3)(iii),[4] because he is the only "mob-type boss" who did not himself deliver the fatal blow occupying Pennsylvania's death row. The fact that there is no other death row prisoner in his precise circumstances leads appellant to argue that the proportionality review conducted by this Court on direct appeal was "flawed." Since, as appellant necessarily concedes, the proportionality of his sentence was actually decided by this Court on direct appeal, this claim is previously litigated. *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 708 (1998) ("This court has already fulfilled its statutory obligation to review Appellant's sentence for proportionality and ruled against him on this issue. This issue is now beyond the purview of the PCRA because it was previously litigated.") In any event, the notion that "proportionality" review requires exact factual equivalence between cases to approve a sentence of death is obviously meritless.

With respect to this same claim, appellant also requests access to the sentencing data employed by this Court in its proportionality review, which he claims is necessary to proper-

4. In 1997, the General Assembly deleted the requirement of proportionality review. This Court continues to undertake a proportionality review of death sentences in cases where the sentence of death was imposed prior to June 25, 1997, the effective date of the repeal. *See Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426 (1997).

ly brief his claim. We rejected a similar such claim in *Albrecht*, noting that the records were fully accessible to the public, thus giving appellant access to the data. *Id.* at 708 n. 16 (citing *Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656, 669 (1986)). Thus, appellant is not entitled to additional or collateral proportionality review of his sentence.

■ Appellant raises an additional seven claims that are procedurally barred under the PCRA's waiver provision. *See* 42 Pa.C.S. § 9544(b) (issue is waived if petitioner failed to raise it and the issue could have been raised, *inter alia*, before trial, at trial, or on appeal). The seven statutorily waived claims are:

(1) whether the trial court's manner of conducting *voir dire* violated Pennsylvania and federal law because it resulted in the exclusion of jurors who merely "may" or "might" have difficulty imposing a death sentence (Argument I);

(2) whether the trial prosecutor prejudiced appellant in the penalty phase by arguing that he was a large-scale drug dealer where that fact was irrelevant (Argument II);

(3) whether appellant was denied his federal and state constitutional rights to a fair and reliable sentencing verdict because a cautionary instruction was not requested or given which should have informed the jury to ignore the evidence of bad acts which had been admitted at the guilt phase for a limited purpose (Argument IV);

(4) whether the introduction of allegedly irrelevant evidence at the penalty phase that appellant's sentence for his federal conviction was for "life imprisonment without parole" violated appellant's right to a fair and reliable sentencing verdict (Argument VI);

(5) whether the trial court erred in the penalty phase by failing to issue a "life without possibility of parole" instruction (Argument IX);

(6) whether the trial prosecutor committed misconduct during the guilt phase by improperly requesting that the jury draw a negative inference that the defense was trying to

hide something because the defense interposed many objections (Argument XI); and

(7) whether the trial prosecutor created a fixed bias against appellant in the jury's mind by arguing that Commonwealth witness, Rodney Carson, had to be protected and relocated because appellant was a dangerous man with the ability to harm Carson (Argument XII).

These record-based issues are all posed as claims of either trial court error or misconduct by the prosecutor. Because the claims could have been presented on direct appeal, but were not, they are waived. *See Bond*, 2002 WL 1958492, at *3 (claims that could have been raised on direct appeal but were not are waived under PCRA); *Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 940 (2001); (same) *Id.* at 948 (Castille, J., concurring) (same); *Commonwealth v. Abdul Salaam*, 808 A.2d 558, 2001 WL 34041795, at * 1 (Pa. 2001) (same).

In his argument respecting some—but not all—of these waived record-based claims, appellant includes assertions that counsel was ineffective for failing to raise the claim.[5] These assertions, however, do not alter the fact that the claims are waived as record-based claims of error under the requirements of the PCRA.

■ To the extent that appellant intends his references to counsel's alleged inadequacy to raise distinct claims of counsel ineffectiveness, not suggested by his framing of issues, we note that those versions of the claims are not waived under the PCRA, since this PCRA is appellant's first opportunity to challenge the performance of trial/direct appeal counsel. Given the undeveloped nature of the assertions, it is not clear

5. With respect to claims IV, VI and IX, appellant makes no reference at all to counsel being ineffective. With respect to Argument II, appellant includes a single sentence in his Argument, *see* Brief for Appellant, 26, accompanied by no legal citation or substantive argument. With respect to Arguments XI and XII, appellant includes single declaratory assertions of counsel lacking a strategic reason for his inaction, and being ineffective, respectively. *See id.* 49, 51. Neither assertion is explained or supported by reference to any authority. Finally, appellant devotes four sentences to a subsidiary claim of ineffectiveness regarding Argument I. That assertion will be addressed in text, *infra.*

whether these offhanded references to prior counsel's alleged ineffectiveness are intended to sound under the Federal or the Pennsylvania Constitution, or both. Since the constitutional test for counsel ineffectiveness is the same under both charters—*i.e.,* it is the *Strickland* test, *see Bell v. Cone,* 535 U.S. 685, ——, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Bond,* —— A.2d ——, ——, 2002 WL 1958492, at *5 (Pa. Aug.23, 2002); *Commonwealth v. (Charles) Pierce,* 515 Pa.153, 527 A.2d 973 (1987)[6]—— we will assume that appellant intends his averments to pose coextensive questions sounding under both charters.

■ The constitutional ineffectiveness standard requires appellant to demonstrate that: (1) his underlying claims are of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. *Commonwealth v. (Michael) Pierce,* 567 Pa.186, 786 A.2d 203, 213 (2001); *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326, 333 (1999). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *(Michael) Pierce,* 786 A.2d at 221–22. *See also Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517, 525 (2001) ("PCRA counsel must, in pleadings and briefs, undertake to develop, to the extent possible, the nature of the claim asserted with respect to each individual facet of a layered ineffectiveness claim, including that which relates to appellate counsel."); *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 701 (1998) ("If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone

6. In *Pierce,* this Court recognized that the *Strickland* test was the proper test to evaluate ineffectiveness claims raised under the Pennsylvania Constitution. The Third Circuit has likewise recognized that Pennsylvania's standard for assessing claims of counsel ineffectiveness is materially identical to *Strickland. Werts v. Vaughn,* 228 F.3d 178, 203–04 (3d Cir.2000).

and the court need not first determine whether the first and second prongs have been met.").[7]

As noted, although appellant occasionally makes reference to his counsel being ineffective with respect to his seven waived claims of record-based error, he does not actually develop any of those claims of ineffective assistance of counsel in any meaningful fashion. The closest appellant comes to crafting a discernible argument is in Argument I, where he asserts, in the concluding paragraph, that trial counsel was ineffective for failing to object to the trial court's *voir dire* questions concerning capital punishment which, he claims, led to the exclusion of jurors who were not " 'irrevocably committed' to vote against the death penalty." Appellant "submits" that counsel did not have a reasonable strategic basis for failing to object, but then admits that the "record is silent" on the point and makes no proffer respecting counsel. Instead, he requests that we remand for an evidentiary hearing so that he may discover whether counsel in fact had a reasonable basis for failing to object.[8] Appellant does not address at all the *Strickland/Pierce* prejudice requirement. Claims of ineffective assistance of counsel are not self-proving; this undeveloped claim of ineffectiveness is insufficient to prove an entitlement to relief. Appellant's assertions of counsel's ineffectiveness with respect to other of his waived claims of record-based error, which are stated in even balder terms, fail for the same reason. *See Commonwealth v. Bond*, ⸻ A.2d ⸻, ⸻, 2002 WL 1958492, at *4 (Pa. Aug.23, 2002) (reaffirming that "boilerplate allegations of ineffectiveness of PCRA counsel . . ., for failing to raise these claims below, . . . fail because they are underdeveloped."); *Commonwealth v.*

---

**7.** Although the Pennsylvania test for ineffectiveness is the same as *Strickland's* two-part performance and prejudice standard, in application this Court has characterized the test as a tripartite one, by dividing the performance element into two distinct parts, *i.e.*, arguable merit and lack of reasonable basis. *See Bond, supra.*

**8.** With respect to appellant's request for an evidentiary hearing, we note that "[a]n evidentiary hearing . . . is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness." *Commonwealth v. Scott*, 561 Pa. 617, 752 A.2d 871, 877 n. 8 (2000).

*Bracey,* 568 Pa. 264, 795 A.2d 935, 940 n. 4 (2001) ("Such an undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffective-ness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief"); *Common-wealth v. Abdul Salaam,* 808 A.2d 558, 560 n. 3, 2001 WL 34041795, at *1 n. 3 (Pa.2001) (same); *(Michael) Pierce,* 786 A.2d at 221 (appellant cannot prevail on claim of ineffective assistance of counsel when claim is not developed); *Common-wealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332, 1335 (1981) (mere abstract or boilerplate allegations of ineffectiveness "cannot be ineffectiveness"). Thus, these versions of the claims fail.

An eighth claim (Argument X) is waived for the distinct reason that it was not raised in the PCRA court. In Argument X, appellant submits that the aggravating circum-stance found by the jury, 42 Pa.C.S. § 9711(d)(10), does not apply to him because he was a mere accomplice, as opposed to the actual shooter. However, under our procedural rules, "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). *See also Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 725 (2000); *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 704, 706 (1998). Appellant recognizes that he waived this argument by not raising it below, but argues that the waiver should be overlooked or relaxed because he challenged the applicability of § (d)(10) on different grounds. The relaxed waiver rule, however, is not available upon PCRA appeal. *See Commonwealth v. Kemp,* 562 Pa. 154, 753 A.2d 1278, 1285 (2000); *Albrecht,* 720 A.2d at 700. Appellant also alleges, in boilerplate fashion, that present counsel was ineffective for failing to raise the issue below. This claim fails both because the assertion is boilerplate, and also because, as appellant also admits, the case upon which he relies, *Commonwealth v. Lassiter,* 554 Pa. 586, 722 A.2d 657 (1998), was not decided until almost a year after the PCRA court dismissed the petition. Counsel cannot be ineffective for failing to anticipate the decision. *Commonwealth v. Tilley,* 566 Pa. 312, 780 A.2d

649, 652–53 (2001); *Commonwealth v. Fowler*, 550 Pa. 152, 703 A.2d 1027, 1029 (1997).

Five claims remain for this Court's consideration: (1) whether previous counsel was ineffective on direct appeal for failing to claim that *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (plurality), which was decided after this trial, required this Court to remand for a new penalty phase hearing (Argument V); (2) whether appellate counsel was ineffective for failing to claim that the evidence was insufficient to support the aggravating circumstance (Argument VII); (3) whether trial counsel was ineffective for failing to object to the prosecutor's guilt phase summation in which the prosecutor allegedly stated his personal belief in appellant's guilt and the credibility of the Commonwealth's "star" witness (Argument XIII); (4) whether the cumulative impact of repeated instances of prejudicial testimony implicating appellant in uncharged, unrelated crimes deprived appellant of a fair trial (Argument XVII); and (5) whether appellant is entitled to a PCRA evidentiary hearing on his motion for a new trial based on the newly-discovered evidence concerning one of the trial jurors (Argument XIX).

In Argument V, appellant claims that the prosecutor argued his future dangerousness at the penalty hearing and therefore, under *Simmons*, he was entitled to a jury instruction that a life sentence in Pennsylvania carries no possibility of parole. Appellant notes that the *Simmons* case was decided while his direct appeal was still pending in this Court and, therefore, he was entitled to its retroactive benefit. He then alleges that prior counsel was ineffective on that appeal for failing to demand relief in light of the new *Simmons* decision. This claim of ineffectiveness fails for several reasons.

"A *Simmons* instruction, detailing what a life sentence means in Pennsylvania, is required only if the prosecution makes the defendant's future dangerousness an issue in the case and the defendant specifically requests such an instruction." *Commonwealth v. Spotz*, 563 Pa. 269, 759 A.2d 1280, 1291 (2000) (citing *Commonwealth v. Chandler*, 554 Pa.

401, 721 A.2d 1040, 1046 (1998)); *Commonwealth v. Smith,* 544 Pa. 219, 675 A.2d 1221, 1232 (1996). As we noted in *Spotz,* "[t]he trial court's obligation to issue a *Simmons* charge is triggered only upon the existence of *twin* requirements, *i.e.,* future dangerousness being placed at issue, and a defense request." 759 A.2d at 1291 n. 14. Here, because appellant did not request a *Simmons*-type charge at trial, counsel was in no position to claim on appeal that the trial court erred in failing to issue the charge.

Indeed, for the same reason, counsel on appeal was in no position to argue for a "retroactive application" of *Simmons* to this case. It is settled that, "in order for a new rule of law to apply retroactively to a case pending on direct appeal, the issue had to be preserved at 'all stages of adjudication up to and including the direct appeal.' " *Tilley,* 780 A.2d at 652 (quoting *Commonwealth v. Cabeza,* 503 Pa. 228, 469 A.2d 146, 148 (1983)). In *O'Dell v. Netherland,* 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997), the U.S. Supreme Court held that *Simmons* represented a "new" constitutional rule. Because appellant had not preserved a *Simmons*-type claim at trial, counsel could not demand retroactive application of the new rule upon appeal.

Finally, counsel cannot be deemed ineffective for having failed to properly preserve a *Simmons* objection, so as to secure the retroactive benefit of the decision. At the time of appellant's penalty hearing in 1993, *Simmons* did not yet exist; in addition, as noted above, the Supreme Court has determined that the rule announced in *Simmons* was a new rule. Counsel cannot be held ineffective for failing to predict such a new course in the law. *Tilley,* 780 A.2d at 652–53; *Fowler,* 703 A.2d at 1029.

In Argument VII, appellant argues that appellate counsel was ineffective for failing to claim that the evidence was insufficient to support the aggravating circumstance found by the jury. Appellant faults counsel for failing to argue that the evidence did not support the § (d)(10) aggravator because the scope of the provision is ambiguous. Specifically, appel-

lant argues that § (d)(10) is unclear because it requires that the defendant be convicted of another offense where a sentence of "life imprisonment or death" was imposable. Appellant notes that his federal offense exposed him only to a sentence of life imprisonment, and not death; therefore, he claims, the statutory aggravating circumstance was not implicated. However, the disjunctive language in § (d)(10) is clear and unambiguous. Previous convictions qualify if they exposed the defendant to *either* life imprisonment or death. The statute does not require that *both* life imprisonment and death be sentencing options for any particular offense to qualify. Moreover, even if appellant's construction of the statute were someday accepted, his claim of counsel ineffectiveness would fail because counsel's performance must be measured by the legal landscape in existence at the time counsel had to act. Appellant cites no cases, and our research has uncovered none, that command his strained construction of the statute even now, much less in 1995 when counsel filed the brief on direct appeal. Counsel cannot be faulted for failing to advance a novel legal theory which has never been accepted by the pertinent courts. *See Commonwealth v. Todaro*, 549 Pa. 545, 701 A.2d 1343, 1346 (1997) ("counsel's stewardship must be judged under the existing law at the time of trial and counsel cannot be deemed ineffective for failing to predict future developments or changes in the law"). Nor can counsel be ineffective for failing to raise a meritless claim. *See Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 358 (1995).

█ In Argument XIII, appellant claims that trial counsel was ineffective for failing to object to the prosecutor's closing argument, in which he allegedly stated his personal belief in appellant's guilt as well as his belief in the credibility of Christopher Anderson, a key Commonwealth witness. Appellant's argument in this regard consists of: a block quotation of two portions of the prosecutor's summation; an unexplained assertion that the quoted statements were improper because they reflected the prosecutor's personal beliefs; a string citation to authorities standing for the proposition that expres-

sions of personal opinion by the prosecutor are strictly prohibited; a conclusory assertion that trial counsel should have objected, sought cautionary instructions and/or requested a mistrial; and a statement that the comments were particularly harmful because the jury's assessment of Anderson's credibility was important. The Commonwealth responds that the remarks concerning Anderson, when properly viewed in context, were properly responsive to the "relentless" defense attack on that witness's credibility, and were delivered within the bounds of permissible oratorical flair. The remarks concerning appellant's guilt, the Commonwealth argues, constituted nothing more than an appropriate plea that the jury find appellant guilty based upon the evidence.

It is, of course, well-settled that the prosecutor may fairly respond to points made in the defense closing. *See Commonwealth v. Trivigno*, 561 Pa. 232, 750 A.2d 243, 249 (2000) (plurality opinion) ("A remark by a prosecutor, otherwise improper, may be appropriate if it is in fair response to the argument and comment of defense counsel") (citing *United States v. Robinson*, 485 U.S. 25, 31, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988)); *Commonwealth v. Marrero*, 546 Pa. 596, 687 A.2d 1102, 1109 (1996). Moreover, as we noted in appellant's direct appeal, where he challenged other aspects of the prosecutor's closing, "prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair." *Commonwealth v. Jones*, 542 Pa. 464, 668 A.2d 491, 514 (1995). We also noted that it is settled that the prosecutor may comment on credibility, as long as the comment does not involve an assertion of personal opinion. *Id.* at 515. Finally, we noted that, in this case, "the trial court instructed the jury in its opening and closing instructions that counsel's statements were not evidence" and, of course, "the jury is presumed to follow instructions." *Id.* at 515 n. 27.

Appellant's argument does not demonstrate that trial counsel was ineffective for failing to object to these additional remarks. First, it is not self-evident that the remarks appellant quotes were expressions of personal opinion, rather than

responsive comments based upon the evidence, and an exhortation to convict based upon the evidence. But, even assuming the remarks were objectionable, appellant's argument cannot prove counsel to have been ineffective. In failing to object to the remarks, counsel could ensure that they were not highlighted for the jury, while reasonably relying upon the trial court's overall, repeated instructions on the limited role of counsel's argument to mitigate any chance of prejudice. Since appellant does not rebut the presumption that counsel was effective, his claim fails. *Commonwealth v. Rollins*, 558 Pa. 532, 738 A.2d 435, 441 (1999) ("As the starting point for our review of an ineffective assistance of counsel claim, we presume that counsel is effective.").

In Argument XVII, appellant claims that, on direct appeal, trial counsel raised fourteen instances where prejudicial evidence regarding other crimes, including murder, was introduced at trial. Appellant asserts that cautionary instructions were given with respect to "much of this evidence," but "only some" of those instructions were adequate. Appellant then notes that counsel on appeal claimed that the "cumulative effect" of these prejudicial exchanges denied him a fair trial, but that this Court never addressed the cumulative effect claim. Since we never addressed the claim, appellant argues, it is not previously litigated and, thus, by appellant's reasoning, he may renew the claim now.

For purposes of review, we will assume that appellant may appropriately renew the claim. Even so, he plainly is not entitled to relief. Appellant cites, without further explanation, to federal cases that he claims stand for the broad proposition that "[s]ettled law requires this court to consider the cumulative prejudicial impact of all of these errors." Brief for Appellant, 63. Even if it is assumed that this is so,[9] appellant

9. In point of fact, the three cases cited by appellant-*Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (involving question of materiality for alleged discovery violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (articulating federal test for assessing claim of ineffective assistance of counsel); and *Lesko v. Lehman*, 925 F.2d 1527 (3d Cir.1991)

has not identified what "errors" occurred at his trial. Although appellant adverts to the brief he filed on direct appeal when he refers to "fourteen" errors, that brief is not part of the record before us now. Even if it were, appellant fails to account for the outcome of those fourteen complaints upon his direct appeal. This Court is not obliged to attempt to ascertain on its own the claims appellant intends to refer to; pore over the direct appeal opinion to see our resolution of each claim and determine which, if any, were found to constitute error; and then assess the "cumulative impact" of those incorrect rulings, if there were any. That is appellant's task. Since appellant has failed to present this claim in any kind of meaningful fashion, it fails. In any event, as the Commonwealth notes, this Court found on direct appeal that the trial court did not "err" in responding to appellant's evidentiary objections. To the contrary, in multiple instances, the trial court "erred" on the side of caution, and to appellant's benefit, in sustaining defense objections to evidence which, this Court later determined, was properly admissible. *Jones,* 668 A.2d at 503–07. Since there is no prejudicial trial court "error" to cumulate, under appellant's own legal theory, his claim necessarily fails. *Commonwealth v. Rompilla,* 554 Pa. 378, 721 A.2d 786, 795 (1998) ("there [can] be no prejudicial cumulative effect when there [is] no harm in the first place") (citing *Commonwealth v. McGill,* 545 Pa. 180, 680 A.2d 1131, 1136 (1996)).

 In Argument XIX, appellant's final claim, appellant argues that he is entitled to an evidentiary hearing based upon after-discovered evidence that one of the jurors knew appellant and his family, was aware of appellant's involvement in the JBM, and had engaged in a "years-long feud" with appellant's nephew. Appellant alleges that he did not learn that the juror knew him, his family, and his reputation, until after his PCRA petition was already dismissed by the PCRA court.

(decision by intermediate federal appeals panel discussing federal harmless error aspect of federal due process claim arising out of multiple improper comments in penalty phase of state capital proceeding)-do not stand for the broad proposition for which he cites them in this case involving review of Pennsylvania law-based evidentiary claims.

He then tried to raise the issue by filing a "Motion for New Trial Based on After Discovered Evidence," which the PCRA court denied without a hearing. As noted above, in addition to raising this issue in his appeal brief, appellant filed a motion to supplement the record with a proffer relating to this claim that was not available in the PCRA record since he did not learn of the claim until the record had closed. The motion to supplement the appellate record was denied by *per curiam* order.

We do not believe that the PCRA court erred in dismissing the belated motion, but we modify that order of dismissal to the extent it suggests a ruling on the merits. Although styled in the PCRA court as a motion for a new trial, the motion could be entertained by that court only under authority of the PCRA. " 'By its own language, and by judicial decisions interpreting such language, the PCRA provides the sole means for obtaining state collateral relief.' " *Commonwealth v. Hall,* 565 Pa. 92, 771 A.2d 1232, 1235 (2001) (quoting *Commonwealth v. Yarris,* 557 Pa. 12, 731 A.2d 581, 586 (1999)). *See also* 42 Pa.C.S. § 9542; *Commonwealth v. Eller,* 807 A.2d 838, 842 (Pa.2002); *Commonwealth v. Chester,* 557 Pa. 358, 733 A.2d 1242, 1250–51 (1999); *Commonwealth v. Ahlborn,* 548 Pa. 544, 699 A.2d 718, 721 (1997). Although it is not entirely clear, there are indications in the PCRA court's order that it viewed the motion not as an additional pleading or claim properly resolvable on appellant's first PCRA, but as a serial PCRA petition. This is suggested by the fact that the PCRA court cited to *Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107 (1988) and *Commonwealth v. Blackwell,* 384 Pa.Super. 251, 558 A.2d 107 (1989), cases which address the additional showing required to prevail upon a serial PCRA petition. To the extent that the court below so construed the belated filing, we note that a serial or subsequent PCRA petition may not be entertained while a previous petition is still pending. *See Commonwealth v. Lark,* 560 Pa. 487, 746 A.2d 585, 588 (2000) ("[W]hen an appellant's PCRA appeal is pending before a court, a subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA

petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review."). The PCRA, of course, specifically addresses claims predicated upon "facts ... which ... were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). Moreover, such a claim, if proven, qualifies as an exception to the PCRA time-restriction.

Given the timing and styling of appellant's belated motion, we do not believe that the PCRA court was obliged to entertain it as if it were a proper modification of the PCRA pleading which had just been dismissed. By the same token, however, the court was not authorized to purport to pass upon the merits of the claim. Accordingly, we modify the PCRA court's order to make clear that its denial of the motion is without prejudice to appellant's right to attempt to litigate the claim in a future proceeding. We offer no view upon the cognizability or merit of the claim.

For the foregoing reasons, the order of the PCRA court denying appellant's petition is affirmed. The Prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor in accordance with 42 Pa.C.S. § 9711(i).

Chief Justice ZAPPALA and Justice NIGRO concur in the result.