J-S04020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MAURICE ANDREWS | |
| Appellant | No. 1492 EDA 2019 |

Appeal from the PCRA Order entered April 24, 2019
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0004380-2013

BEFORE:   BENDER, P.J.E., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 11, 2020**

Appellant, Maurice Andrews, appeals from the April 24, 2019 order dismissing his petition for collateral relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.   This matter is before us after we remanded with directions to the PCRA court to give Appellant the opportunity to amend his PCRA petition to address his claim of ineffective assistance of counsel for failure to call a witness.   ***See Commonwealth v. Andrews***, No. 598 EDA 2015, unpublished memorandum (Pa. Super. filed April 15, 2016).   After holding a hearing, the PCRA court denied Appellant's claim and dismissed the PCRA petition because Appellant failed to prove that counsel was ineffective.   We agree.   Accordingly, we affirm the order of the PCRA court.

We summarized the factual background and procedural history of this matter in our previous memorandum, which we incorporate herein by

reference. *Id.* at 2-4.[1] Briefly,[2] Appellant and co-defendant ambushed victim when victim exited the bar. While victim struggled with co-defendant for control of co-defendant's revolver, Appellant shot victim five times, killing him. Co-defendant also was hit by Appellant's gunfire and was wounded in the leg and hand. Appellant and co-defendant fled the scene separately.

After being apprehended several hours after the shooting, co-defendant gave the investigators several statements implicating Appellant as the shooter. Appellant was apprehended a few weeks later at his aunt's home.

After a trial, Appellant was convicted, *inter alia*, of third degree murder and conspiracy to commit third degree murder and was sentenced to an aggregate term of 35 to 70 years' incarceration.

We affirmed the judgment of sentence on April 15, 2016. *See Andrews*, No. 598 EDA 2015, unpublished memorandum (Pa. Super. filed April 15, 2016).

Appellant filed his first PCRA petition on February 15, 2017, wherein he raised several claims of ineffective assistance of trial counsel, including a claim of ineffective assistance of counsel for failing to call Mr. White[3] as a witness

---

[1] *See Commonwealth v. Andrews*, No. 2325 EDA 2017, unpublished memorandum (Pa. Super. filed September 6, 2018).

[2] Unless otherwise stated, the summary comes from the PCRA Court opinion.

[3] At the time of trial, Mark White, Appellant's uncle, was being held on a material witness warrant. Neither the Commonwealth nor Appellant called Mark White as a witness at trial.

at trial. The PCRA court dismissed Appellant's PCRA petition without holding a hearing.

We vacated the portion of the order denying relief on Appellant's claim of ineffective assistance of counsel for failing to call Mark White as a witness because the PCRA court did not first give Appellant the opportunity to amend his petition to correct the procedural deficiencies related to his claim. *See Andrews*, No. 2325 EDA 2017, *supra*.

Upon remand, Appellant filed an amended PCRA petition, renewing his ineffectiveness claim regarding Mark White. After holding a hearing, the PCRA court denied relief and dismissed the PCRA petition. This appeal followed.

On appeal, Appellant argues that the trial court erred in not finding trial counsel ineffective for failing to call Mr. White as a witness at trial. We disagree.

In addressing ineffective assistance of counsel claims, we are guided by the following authorities:

> [A] PCRA petitioner will be granted relief [for ineffective assistance of counsel] only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Colavita*, 993 A.2d 874, 886 (Pa. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In Pennsylvania, we have refined the *Strickland* performance and prejudice test into a three-part inquiry. *See Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa.

- 3 -

2001). Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. ***Commonwealth v. Ali***, 10 A.3d 282, 291 (Pa. 2010).

***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014) (citations modified). A petitioner's failure to satisfy any one element of the test will result in the rejection of his claim. ***Commonwealth v. Jones***, 811 A.2d 994, 1002 (Pa. 2002).

Regarding the specific issue here, it is worth noting that the decision to call a particular witness implicates matters of trial strategy. ***See Commonwealth v. Washington***, 927 A.2d 586, 599 (Pa. 2007). Thus, Appellant must "prove that the strategy employed by trial counsel was so unreasonable that no competent lawyer would have chosen that course of conduct." ***Commonwealth v. Chmiel***, 889 A.2d 501, 541 (Pa. 2005) (internal quotation marks and citation omitted).

At the evidentiary hearing, Mr. White testified

that prior to Appellant's trial, he gave two statements to law enforcement, and he also testified before the grand jury in between his two statements.

Mr. White testified that his first statement, wherein he indicated that he did not see Appellant and [co-defendant] on the night of the murder, was a lie. He testified that his grand jury testimony was true and further added that he was not [at location of murder] when the gunshots were fired, though he did hear the shots because he was just a few block away. Mr. White also testified that he was prepared to testify at Appellant's trial consistent with what he told the grand jury. He stated that he never told [trial counsel] that he wanted to testify, and does not recall if he told Appellant.

[Trial counsel testified that he spoke to Mr. White on multiple occasions, but he never told counsel that he wanted to testify or that he was interested in testifying.] [Trial counsel] testified that [Mr. White's testimony] was harmful to Appellant because it placed him at the scene of the murder shortly before the murder and established that Appellant and [co-defendant] specifically [intended] to "holler' at victim. In [trial counsel]'s professional opinion, the testimony would have hindered Appellant's case because it corroborated and verified [co-defendant] version of events, which was the Commonwealth's theory of the case.

[Trial counsel] further explained that Mr. White's testimony was damaging because it placed a gun in the hands of [co-defendant] just before the murder; it put a gun in Appellant's hands on another occasion; and it was inconsistent with his prior statement, which would have shown the jury that he was a liar. [Trial counsel] also testified that he had several discussions with both Appellant and his mother about the potential of calling Mark White as a witness.

PCRA Court Opinion, 8/19/19, at 3-4.

In denying relief, the PCRA court noted that

the . . . record is replete with strategic bases for trial counsel's decision not to call Mark White as a witness. At the evidentiary hearing, [trial counsel] testified that his strategy regarding Mark White was dependent on whether [co-defendant]'s statements came in at trial. [Trial counsel] described that Mark White's testimony would have been damning to the defense because it would have corroborated his grand jury testimony that placed Appellant at the scene of the murder at the time of the murder. Moreover, Mr. White's testimony would have largely substantiated crucial aspects of [co-defendant]'s statements while counsel's strategy was to attack [co-defendant]'s statement and show that his version of events was untruthful.

When [co-defendant] did testify at trial, the strategy pivoted. The strategy went from reasonable doubt to attacking [co-defendant's] statements, which included attempting to demonstrate that [co-defendant] was untruthful and pointing out the lack of corroboration of [co-defendant] version of events.

. . . .

- 5 -

[Trial counsel] acknowledged that there were slight inconsistencies between Mark White's grand jury [co-defendant]'s statements. As a matter of trial strategy, however, he believed that calling Mark White to the stand to contradict "minor details" from [co-defendant]'s statements would not outweigh the injurious nature of his testimony corroborating crucial aspects of [co-defendant] statement.

. . . .

[Trial counsel] also explained that although Mark White's grand jury testimony did not place a weapon in Appellant's hand on the night of the murder, his testimony placed two different guns in Appellant's hands on occasions prior to the murder. [Trial counsel] indicated that he could not be certain whether this evidence would be able to come in at trial, nonetheless, "it was a demining piece of evidence of him putting his nephew in possession of a firearm." Thus, this was another factor in [trial counsel]'s decision not to call Mark White as witness. [Trial counsel] testified that the fact that Mark White gave several inconsistent statements and admitted that he lied, also played into his decision not to call him as a witness at trial. . . .

The final decision not to call Mark White as witness, however, was not made until after the Commonwealth rested its case, at which time it was apparent that Mark White was not going to be called as a Commonwealth witness. Until that time, [trial counsel] assumed that Mr. White would be called as a Commonwealth witness because he was being held in prison on a material witness warrant for the duration of Appellant's trial. As a matter of trial strategy, [trial counsel] chose to highlight the absence of Mark White, a potential eyewitness to the crime, in his closing argument to the jury.

*Id.* at 7-8 (citations to the record omitted).

The PCRA court found, and we agree, that trial counsel acted as a skilled and effective counsel, and that his decision not call Mr. White as a witness was certainly reasonable under the circumstances described above. Accordingly,

we conclude Appellant failed to prove that trial counsel was ineffective for not calling Mark White as a witness.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/20